**BROWN KWON & LAM LLP**
William Brown, Esq. (WB6828)
521 Fifth Avenue, Suite 1744
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
wbrown@bkllawyers.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **RILIND DUKA,**<br>*on behalf of himself and others similarly situated*,<br><br>**Plaintiff,**<br><br>- against -<br><br>**ALLIANCE TRI-STATE CONSTRUCTION, INC.,**<br>**ALLIANCE TRI-STATE MAINTENANCE CORP.,**<br>**ARGJENT DUKA and MERIMA MESIK DUKA,**<br><br>**Defendants.** | **Case No: 20-cv-6648**<br><br>**FIRST AMENDED CLASS**<br>**AND COLLECTIVE**<br>**ACTION COMPLAINT** |

Plaintiff RILAND DUKA ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to himself, and upon information and belief as to other matters, by and through his undersigned attorneys, hereby files this First Amended Class and Collective Action Complaint against Defendants, ALLIANCE TRI-STATE CONSTRUCTION, INC., ALLIANCE TRI-STATE MAINTENANCE CORP. (collectively, "Corporate Defendants" or "Alliance"), ARGJENT DUKA, and MERIMA MESIK DUKA (collectively, "Individual Defendants," and together with Corporate Defendants, "Defendants") and alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this action on behalf of himself and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et*

*seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from Defendants: (1) unpaid overtime wages, (2) liquidated damages, and (3) attorneys' fees and costs.

2.      Plaintiff also brings this action on behalf of himself and similarly situated workers pursuant to the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, the supporting New York State Department of Labor Regulations, and the Federal Rule of Civil Procedure 23 ("Rule 23"), seeking from Defendants: (1) unpaid minimum wages (2) unpaid prevailing wages, (3) unpaid overtime wages, (4) unpaid spread-of-hours premiums, (5) liquidated damages for the late payment of wages, (6) damages for improper wage deductions, (7) stautory penalties, (8) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

4.      This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### *Plaintiff*

#### *RILIND DUKA*

7.      Plaintiff is an adult who resides in Richmond County, New York.

8.      Plaintiff was a covered employee within the meaning of the FLSA and NYLL.

9.      Plaintiff retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

### *Defendants*

10.      At all relevant times, Defendants owned and operated an enterprise comprised of two corporate entities "Alliance Tri-State Construction, Inc." and "Alliance Tri-State Maintenance, Corp."

11.      At all relevant times, Corporate Defendants provided roofing installation and maintenance service, a majority of which were public works jobs.  A majority of Defendants' employees were union employees, however a sizable number of employees, including Plaintiff were non-union.

12.      At all relevant times, Defendants owned and operated Corporate Defendants as a single integrated enterprise. Specifically, Defendants had a common business purpose, shared common ownership and management, shared office and administrative staff, used the same office space, engaged in interrelated operations, and have centralized control of labor relations.

13.      At all relevant times, employees and equipment were interchangeable and freely transferred among Corporate Defendants.

14.      At all relevant times, Corporate Defendants were operated under the same wage and hour policies established by Individual Defendants.

3

15.     At all relevant times, Defendants jointly employed Plaintiff and similarly situated employees.

16.     At all relevant times, each Defendant had substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

17.     At all relevant times, Defendants were and continue to be employers within the meaning of the FLSA and NYLL.

### *ALLIANCE TRI-STATE CONSTRUCTION, INC.*

18.     Corporate Defendant ALLIANCE TRI-STATE CONSTRUCTION, INC. is a domestic business corporation organized under the laws of the State of New York with a principal place of business located at 3635 Richmond Avenue, Staten Island, NY 10312 and an address for service of process located at 1409 Richmond Avenue, Staten Island, New York, NY 10314.

19.     At all relevant times, ALLIANCE TRI-STATE CONSTRUCTION, INC. had an annual dollar volume of sales in excess of $500,000.

20.     ALLIANCE TRI-STATE CONSTRUCTION, INC. is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

21.     At all relevant times, ALLIANCE TRI-STATE CONSTRUCTION, INC. has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

22.     ALLIANCE TRI-STATE CONSTRUCTION, INC. applies the same employment policies, practices and procedures to all non-exempt employees at Alliance.

23.     ALLIANCE TRI-STATE CONSTRUCTION, INC. is listed as the payor on pay stubs received by employees of Alliance.

### *ALLIANCE TRI-STATE MAINTENANCE CORP.*

24.     Corporate Defendant ALLIANCE TRI-STATE MAINTENANCE CORP. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 3635 Richmond Avenue, Staten Island, NY 10312 and an address for service of process located at 157 Adams Avenue, Staten Island, NY 10306.

25.     At all relevant times, ALLIANCE TRI-STATE MAINTENANCE CORP. had an annual dollar volume of sales in excess of $500,000.

26.     ALLIANCE TRI-STATE MAINTENANCE CORP. is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

27.     At all relevant times, ALLIANCE TRI-STATE MAINTENANCE CORP. has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

28.     ALLIANCE TRI-STATE MAINTENANCE CORP. applies the same employment policies, practices, and procedures to all non-exempt employees at Alliance.

### *ARGJENT DUKA*

29.     At all relevant times, Individual Defendant ARGJENT DUKA has been an owner and operator of Alliance.

30. At all relevant times, ARGJENT DUKA has been a principal of each of the Corporate Defendants.

31. At all relevant times, ARGJENT DUKA has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at Alliance.

32. At all relevant times, ARGJENT DUKA has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at Alliance.

33. At all relevant times, ARGJENT DUKA has had the power to maintain employment records, including time and/or wage records of Alliance employees.

34. At all relevant times, ARGJENT DUKA has been actively involved in managing the day to day operations of Corporate Defendants.

35. At all relevant times, ARGJENT DUKA has had authority over personnel or payroll decisions and employment policies, practices and procedures for Alliance.

36. At all relevant times, ARGJENT DUKA has had the power to prevent or stop any unlawful pay practices that harmed Plaintiff and similarly situated employees.

37. ARGJENT DUKA is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

### *MERIMA MESIK DUKA*

38. At all relevant times, Individual Defendant MERIMA MESIK DUKA was Defendant ARGJENT DUKA's wife and has been an owner and operator of Alliance.

39. At all relevant times, MERIMA MESIK DUKA has been a principal of each of the Corporate Defendants.

40.     At all relevant times, MERIMA MESIK DUKA has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at Alliance.

41.     At all relevant times, MERIMA MESIK DUKA has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at Alliance.

42.     At all relevant times, MERIMA MESIK DUKA has had the power to maintain employment records, including time and/or wage records of Alliance employees.

43.     At all relevant times, MERIMA MESIK DUKA has been actively involved in managing the day to day operations of Corporate Defendants.

44.     At all relevant times, MERIMA MESIK DUKA has had authority over personnel or payroll decisions and employment policies, practices and procedures at Alliance.

45.     At all relevant times, MERIMA MESIK DUKA has had the power to prevent or stop any unlawful pay practices that harmed Plaintiff and similarly situated employees.

46.     MERIMA MESIK DUKA is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

## FLSA COLLECTIVE ACTION ALLEGATIONS

47.     Plaintiff brings the First Cause of Action, the FLSA claims, on behalf of himself and all similarly situated current and former non-union, non-exempt employees employed by Alliance from the date that is six (6) years prior to the filing of the initial Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

48.     At all relevant times, Plaintiff and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiff and FLSA Collective Members the full minimum wage for all hours worked up to forty (40) per workweek, and overtime wages for all hours worked in excess of forty (40) per workweek. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Members.

49.     All of the work that Plaintiff and FLSA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and FLSA Collective Members have performed.

50.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

51.     For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendants' records.

## NEW YORK CLASS ACTION ALLEGATIONS

52.     Plaintiff brings the Second Cause of Action, the NYLL claims, pursuant to Rule 23, on behalf of himself and a class of persons consisting of all current and former non-union, non-exempt employees employed by Alliance from the date that is six (6) years prior to the filing of the initial Class and Collective Action Complaint until the date of final judgment in this matter (the "Class" or "Class Members").

53.     Excluded from the Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

54.     The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendants' payroll and personnel records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendants' records. Notice can be provided by means permissible under Rule 23.

55.     The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is little doubt that there are more than forty (40) members of the Class.

56.     Plaintiff's claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

57.     Plaintiff and Class Members were subject to the same practices of Defendants, as alleged herein, of (i) failing to pay the statutory minimum wage, (ii) failing to pay overtime wages, (iii) failing to pay spread-of-hours premiums, (iv) failing to pay prevailing wages, (v) improperly deducting from wages, (vi) failing to timely make wage payments, (vii) failing to

provide proper wage notices, and (viii) failing to provide proper wage statements, in violation of the NYLL.

58.    Plaintiff and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices and patterns of conduct. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

59.    Plaintiff and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures under the NYLL.

60.    Plaintiff is able and willing to fairly and adequately protect the interests of Class Members and have no interests antagonistic to Class Members.

61.    Plaintiff is represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

62.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual

litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

63.     On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

64.     The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

65.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

66.     Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiff and individual Class Members and include, but are not limited to, the following:

   a.  Whether Defendants employed Plaintiff and Class Members within the meaning of the NYLL;

   b.  Whether Defendants paid Plaintiff and Class Members at the lawful minimum wage rate;

c.   Whether Defendants paid Plaintiff and Class Members at the lawful prevailing wage rate;

d.   Whether Defendants paid Plaintiff and Class Members overtime premiums for hours worked in excess of forty hours each work week;

e.   Whether Defendants timely paid Plaintiff and Class Members at least once per week;

f.   Whether Defendants paid Plaintiff and Class Members the spread-of-hours premium, as required by the NYLL;

g.   Whether Defendants improperly deducted from Plaintiff and Class Members' wages;

h.   Whether Defendants failed to furnish Plaintiff and Class Members with proper wage notices, as required by the NYLL; and

i.   Whether Defendants failed to furnish Plaintiff and Class Members with proper wage statements with every payment of wages, as required by the NYLL.

## STATEMENT OF FACTS

67.   Plaintiff was employed by Defendants as a laborer for Defendants' roofing company from on or around January 1, 2015 until the termination of his employment on or around December 15, 2017.

68.   Throughout his employment with Defendants, Plaintiff's primary duties included driving supplies to and from the worksite at the beginning and end of his shifts, installing roofs, doing demolition, retrieving supplies, performing detail work (painting the roof, performing flood tests, cutting sheet metal, etc.) and making deliveries.  Plaintiff's job required hard manual labor in which he worked very long hours completely exposed to the elements, through both extreme heat and cold.

69.   The majority of Defendants' employees were members of Roofers Local 8. However, Plaintiff as well as a number of other employees, were non-union.  The non-union employees were fraudulently listed on Defendants' payroll records as "supervisors."  However,

Plaintiff, and the other non-union workers, actually worked as laborers. Plaintiff did not have any supervisory responsibilities.

70.     Throughout the majority of his employment, Plaintiff would work extremely long hours, sometimes seven days per week.  For the first three months of Plaintiff's employment, on Mondays through Fridays, Plaintiff would arrive at the Defendants' yard by 6:30 a.m. and would immediately load and drive a truck to the worksite.  Plaintiff then worked continuously at the job site as a laborer until at least midnight, with just two 30-minute breaks at 12:00 p.m. and 8:30 p.m.  On Saturday, Plaintiff worked from 7:00 a.m. until 4:00 p.m. with a 30-minute break at 12:00 p.m.  During the first three months, Plaintiff would occasionally assist with filling hard top which would be performed on Sundays from 7:00 p.m. to 1:00 a.m. without any breaks.  Thus, during this period, Plaintiff could work as much as ninety-seven (97) hours per week.

71.     After the first three months of Plaintiff's employment, until August 2017, Plaintiff worked six days per week.  Plaintiff worked Monday through Friday from 7:00 a.m. until at least midnight, with two 30-minute breaks at 12:00 p.m. and again at 8:30 p.m.  On Saturday, Plaintiff worked from 7:00 a.m. until 4:00 p.m. with a 30-minute break at 12:00 p.m.  In addition, during this period, Plaintiff was frequently told to report to the yard by 6:30 a.m. to deliver tools and equipment from the yard and deliver them to the job sites using the company's pick-up truck.

72.     From around September 2017 until the termination of his employment, Plaintiff worked between three to five days per week from 7:00 a.m. until at least 10:00 p.m. with two 30-minute breaks at 12:00 p.m. and again at 8:30 p.m.  Thus, during this period, Plaintiff worked between forty-two (42) and seventy (70) hours per week.

73.     Defendant did not utilize a punch clock or any other any means of accurately recording Plaintiff's hours worked.

74.     Throughout Plaintiff's employment he was paid a fixed daily rate of $175 regardless of actual hours worked.  Plaintiff was not paid any overtime premiums for hours worked in excess of forty per week.  There was never any understanding between Plaintiff and Defendants that Plaintiff's pay was intended to include overtime premiums.

75.     From the start of Plaintiff's employment until on or around July 1, 2015, Plaintiff was paid entirely in cash.  From on or around July 1, 2015 until the termination of his employment, Plaintiff was paid in a combination of cash and check.  Plaintiff received about 80% of his wages in cash and about 20% as checks.  In total, Defendants paid Plaintiff a total of $1,800 per month in checks, with the balance paid in cash.

76.     Throughout Plaintiff's employment, Defendants failed to timely pay Plaintiff at least once per week.   Defendants would frequently delay Plaintiff's pay for weeks at a time.  Plaintiff would often go as long as six weeks to three months without receiving any pay.  During these periods where Plaintiff was not being paid, Defendant Argjent Duka would give Plaintiff his American Express credit card to pay for necessities such as food and gas.  When Defendants finally did pay Plaintiff his back wages, he would deduct the American Express charges from his pay.   There was never any written agreement between Defendants and Plaintiff authorizing Defendants to make these deductions.

77.     Throughout the relevant period, Defendants entered into numerous contracts with the City of New York, as well as other government agencies, and quasi government agencies (hereinafter, the "Public Works Projects.")  All of the work Plaintiff performed for Defendants was on Public Works Projects.

78.     New York State Labor Law § 220 provides that the wages to be paid to laborers, workmen and mechanics upon public work shall not be less than the "prevailing rate of wages,"

79.     The "prevailing rate of wage" is the rate of wage paid in the locality by virtue of collective bargaining agreements between bona fide labor organizations and employers in the private sector.  New York Labor Law § 220.

80.     New York Labor Law § 220 also requires that the laborers, workmen and mechanics upon such public work be provided "supplemental benefits" at the prevailing rate. "Supplemental benefits" are all forms of renumeration for employment paid in any medium other than cash, including but not limited to health, welfare and non-occupational disability insurance, retirement and vacation benefits, holiday pay and life insurance.   The prevailing rate of supplemental benefits is determined in the same manner as wages.  New York Labor Law § 220.

81.     Plaintiff worked on the following Public Works Projects, the below list is not exhaustive:

   a.   Millennium Art Academy – June 1, 2015 – September 29, 2016;

   b.   P.S. 196 Grand Central Parkway – September 17, 2015 – January 20, 2016;

   c.   P.S. 130 Abrams Stevens Hewitt – April 20, 2016 – June 29, 2016;

   d.   Wilson Avenue Station – June 24, 2016 – July 6, 2016;

   e.   PS 114 The Belle Harbor School – August 18, 2016 – August 30, 2016;

   f.   PS 14 The Fairview School – August 18, 2016 – August 30, 2016;

   g.   PS 272 Curtis Estabrook – October 7, 2015 – January 30, 2016.

82.     Upon information and belief, a schedule of prevailing rates of wages and supplements to be paid all workers furnishing labor on the sites of the Public Works Projects was annexed to and formed a part of each Public Work Contract.

83.     Defendants paid Plaintiff and Class Members less than the prevailing rates of wages and supplements to which Plaintiff and other members of the putative class were entitled under the Public Works Contracts.

84.     Throughout his employment with Defendants, Plaintiff was never paid the spread-of-hours premium for workdays that exceeded ten (10) hours per day.

85.     Throughout his employment with Defendants, Plaintiff did not receive any notices of pay rate or pay day from Defendants, as required under the NYLL.

86.     Throughout his employment with Defendants, Plaintiff did not receive proper wage statements from Defendants, as required under the NYLL.

87.     Based on Plaintiff's observations and conversations with his co-workers at Alliance, Plaintiff, FLSA Collective Members and Class Members were subject to the same unlawful wage and hour policies.

88.     Defendants knowingly and willfully operated their business with a policy of failing to pay the lawful minimum wage to Plaintiff and Class Members, in violation of the NYLL.

89.     Defendants knowingly and willfully operated their business with a policy of failing to pay overtime wages to Plaintiff, FLSA Collective Members and Class Members for all hours worked in excess of forty hours in violation of the FLSA and NYLL.

90.     Defendants knowingly and willfully operated their business with a policy of improperly deducting from Plaintiff and Class Members' pay, in violation of the NYLL.

91.     Defendants knowingly and willfully operated their business with a policy of failing to pay the spread-of-hours premium to Plaintiff and Class Members, in violation of the NYLL.

92.     Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff Class Members the prevailing minimum wage in violation of the NYLL.

93.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to Plaintiff and Class Members pursuant to the requirements of the NYLL.

94.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class Members pursuant to the requirements of the NYLL.

**STATEMENT OF CLAIM**

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

95.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

96.     The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff and FLSA Collective Members.

97.     Defendants failed to pay Plaintiff and FLSA Collective Members overtime wages for all hours worked in excess of forty (40) per workweek, to which they are entitled under the FLSA.

98.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Members of their rights under the FLSA.

99.     Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure

to compensate Plaintiff and FLSA Collective Members overtime wages for all hours worked when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and FLSA Collective Members.

100.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

101.    As a result of Defendants' willful violations of the FLSA, Plaintiff and FLSA Collective Members have suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

102.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Members and the actual compensation paid to Plaintiff and FLSA Collective Members should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

**COUNT II**

**<u>VIOLATION OF THE NEW YORK LABOR LAW</u>**

103.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

104.    At all times relevant, Plaintiff and the Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

105.    Defendants failed to pay Plaintiff Class Members the overtime wages for hours worked in excess of forty (40) per week, to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

106.    Defendants have failed to pay Plaintiff and the Class the spread-of-hours premium for each day that the length of the interval between the beginning and end of their workday was greater than ten (10) hours.

107.    Throughout the relevant period, the New York Labor Law obligated employer to pay "manual workers" weekly, and within seven days of the end of the week in which wages were earned.  NYLL § 191.

108.    Plaintiff in his role as truck driver and laborer qualify him as a manual worker under the NYLL.

109.    Defendants willfully failed to pay Plaintiff his wages within seven days of the end of the week in which wages were earned, in violation of NYLL § 191.

110.    Due to Defendants' failure to timely pay Plaintiff, Plaintiff is entitled to recover from Defendants, 100% liquidated damages for each individual late payment during the relevant period, as well as reasonable attorneys' fees, costs, and interest.

111.    NYLL § 193 prohibits employers from deducting from employee's wages unless expressly authorized in writing, provided such authorization is voluntary and only given following receipt by the employee of written notice of all terms and conditions of the payment and/or its benefits and the details of the manner in which deductions will be made.

112.    Defendants made deductions from Plaintiff's wages without first obtaining express written authorization in violation of the NYLL.

113.    Defendants failed to furnish Plaintiff and the Class with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

114.    Defendants failed to furnish Plaintiff and the Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

115.    Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff and the Class as required by the NYLL and the supporting New York State Department of Labor Regulations.

116.    Defendants failed to properly disclose or apprise Plaintiff and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

117.    As a result of Defendants' willful violations of the NYLL, Plaintiff and the Class are entitled to recover from Defendants their unpaid overtime wages, unpaid minimum wages,

unpaid spread-of-hours premium, improperly deducted wages, liquidated damages, including liquidated damages for the late payment of wages, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

**COUNT III**

**<u>BREACH OF THE PUBLIC WORKS CONTRACTS AND SUBCONTRACTS</u>**

118.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

119.    On information and belief, the Public Works Contracts entered into by Defendants contained schedules of the prevailing rates of wages and supplemental benefits to be paid Plaintiffs and putative Class Members.

120.    Those prevailing rates of wages and supplemental benefits were made a part of the Public Works Contracts and/or Public Works Subcontracts for the benefit of the Plaintiff and Class Members.

121.    Defendants willfully breached the Public Works Contracts and/or Public Works Subcontracts by failing to pay Plaintiffs and the other members of the putative class the prevailing rates of wages and supplemental benefits for all labor performed upon the sites of the Public Works Projects.

122.    Further, Labor Law § 220 and the Public Works Contracts or Public Works Subcontracts specifically require that language mandating the payment of prevailing wages be included in sub-contracts.

123.    To the extent that Defendants' Public Works Subcontracts erroneously and illegally failed to provide language mandating the payment of prevailing wages to their

21

employees, reformation of these Public Works Subcontracts to include such language is equitable and proper.

124.    As a result of Defendants' willful breach of the Public Works Contracts and Subcontracts, Plaintiff and the Class are entitled to recover from Defendants their unpaid prevailing wages and supplements, liquidated damages, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself, FLSA Collective Members and the Class, respectfully requests that this Court grant the following relief:

a.  Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b.  Certification of this case as a class action pursuant to Rule 23;

c.  Designation of Plaintiff as representative of the Class and counsel of record as Class Counsel;

d.  An award of unpaid overtime wages due under the FLSA and NYLL;

e.  An award of unpaid minimum wage due under the NYLL;

f.  An award of unpaid prevailing wages due under the Public Works Contracts;

g.  An award of unpaid spread-of-hours premium due under the NYLL;

h.  An award of damages for improper wage deductions;

i.  An award of damages for the late payment of wages;

j.  An award of liquidated damages as a result of Defendants' willful failure to pay overtime; minimum wage; spread-of-hours premium; unpaid prevailing wages, pursuant to the FLSA or NYLL;

k.  Statutory penalties for Defendants' failure to provide Plaintiff and Class Members with proper wage notices, as required by the NYLL;

l.  Statutory penalties for Defendants' failure to provide Plaintiff and Class Members with proper wage statements, as required by the NYLL;

m.  Pre-judgment and post-judgment interest;

n.  Reasonable attorneys' fees and costs of this action;

o.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

p.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

q.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:  November 2, 2020                          Respectfully submitted,

                                                      **BROWN, KWON & LAM LLP**

                              By:      */s/ William Brown*

                                         William Brown, Esq. (WB6828)
                                         521 Fifth Avenue, Suite 1744
                                         New York, NY 10175
                                         Tel.: (718) 971-0326
                                         Fax: (718) 795-1642
                                         wbrown@bkllawyers.com
                                         *Attorneys for Plaintiff*

## FLSA CONSENT FORM

I hereby consent to be part of the lawsuit against Alliance Tri-State Construction, Inc., Alliance Tri-State Maintenance Corp., Argjent Duka, and Merima Mesik Duka and any such other Defendants who may be added to the case in the future.  I understand that the lawsuit alleges overtime violations under the Fair Labor Standards Act.  I hereby give consent to the law firm of Brown Kwon & Lam, LLP to bring this suit on my behalf.

First and Last Name (printed)

Signature

08-05-20

Date